IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DEBRA A. SMITH** <br> c/o John P.M. Rutan, Esq, <br> 336 S. High Street <br> Columbus, OH 43215 | : <br> : <br> : <br> : <br> : | CASE NO |
| Plaintiffs, | : | JUDGE |
| v. | : | |
| **GALLIA COUNTY JAIL** <br> 18 Locust Street <br> Gallipolis, OH 45631 | : <br> : <br> : | |
| and | : | |
| **GALLIA COUNTY SHERIFFS OFFICE** <br> 18 Locust Street <br> Gallipolis, OH 45631 | : <br> : <br> : | |
| and | : | |
| **MATT CHAMPLIN, SHERIFF** <br> c/o Gallia County Jail <br> 18 Locust Street <br> Gallipolis, OH 45631 | : <br> : <br> : <br> : | |
| and | : | |
| **SHERIFF'S OFFICE CHIEF DEPUTY TROY JOHNSON** <br> c/o Gallia County Jail <br> 18 Locust Street <br> Gallipolis, OH 45631 | : <br> : <br> : <br> : <br> : | |
| and | : | |
| **JOHN DOE 1-10, JANE DOE 1-10** <br> any correction officer or officer or | : <br> : | |

1

| | |
|---|---|
| employee or agent of State of Ohio or | : |
| Gallia County Jail Institute or | : |
| other entities that were | : |
| deliberately indifferent | : |
| to Debra A. Smith | : |
| Names and Addresses Unknown | : |
| | : |
| Defendants. | : |

## I. INTRODUCTION

1. This is a civil rights action filed by Debra Smith, individually, pursuant to 42U.S.C. § 1983 and challenges Defendants failure to provide adequate safety to Debra Smith while employed at Gallia County Jail. This is also an action for deliberate indifference pursuant to the 8th Amendment of the United States Constitution. Plaintiff also alleges violations of the 5th Amendment to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants failed to provide the appropriate safety as established by the institutions policy in requiring at least one male and one female staff member to be on duty at all times when the jail has both male and female inmates. The Defendants also failed to comply with their certification issued by the Ohio Bureau of Adult Detention by having an overpopulated jail. Defendants failure to provide Debra Smith with the appropriate constitutional protections proximately caused the Plaintiff severe pain and suffering among other damages.

## II. JURISDICTION

2. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367. Venue is proper in this division.

2

## III. PARTIES

3. Plaintiff DEBRA SMITH ("Plaintiff) was employed as a correctional officer at Gallia County Jail. Debra Smith began working at Gallia County Jail fulltime on or about the 14th day of December 2015.

4. Defendant GALLIA COUNTY SHERIFF'S OFFICE ("GCSO") is an agency of the state of Ohio responsible for the administration of jail located at 18 Locust Street Gallipolis, OH 45631. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

5. Defendant GALLIA COUNTY JAIL ("GCJ") is an agency of the state of Ohio responsible for the administration of jail located at 18 Locust Street Gallipolis, OH 45631. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

6. Defendant Sheriff, MATT CHAMPLIN is and was at all times relevant to this action the Sheriff of GCSO. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his official capacity.

7. Defendant Chief Deputy TROY JOHNSON is an employee of GCSO. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his official capacity.

8. Defendants John Doe #1-10, and Jane Doe #1-10, names and addresses unknown, were correction officers, guards, officers, employees of Defendants, or other entities that provided deliberately indifferent care/protection, individually or by and through their employees and/or agents, actual or ostensible, to Debra Smith. Plaintiff has been unable to identify the names and/or identities of Defendants John Jane Doe #1-10 through the exercise of reasonable diligence.

Plaintiff reserves the right to substitute a named defendant for such John Jane Doe(s) upon discovery of the name and/or identity of any such individual(s).

## IV. FACTS

9. At all relevant times hereto, the Plaintiff was an employee at GCSO.
10. As an employee of GCSO, Plaintiff was in the care, custody, and control of Defendants.
11. Plaintiff began working fulltime at GCSO as a correction officer back on December 14, 2015.
12. Sometime in May of 2017, the policy at GCSO was updated to protect female employees and provided the following provision. **Exhibit "1"**
    a. ***"When both males and females are housed in the jail at least one male and one female staff member shall be on duty at all times."***
13. During Plaintiffs employment, she became aware of the policy attached hereto as **Exhibit "1"**. This was a policy to protect female corrections offices against the potential threat of violent male criminals.
14. Despite this policy, throughout Plaintiffs employment, there were several occasions only the Plaintiff and another female correction officer were on duty although there were male inmates.
15. Upon information and belief, Plaintiff became aware that GCJ was only rated to house 11 inmates at a time according to Bureau of Adult Detention. **Please see Exhibit "2"**.
16. During the course of Plaintiffs employment, there were many days GCJ housed well more than the amount believed to be permitted (rating) by Ohio Bureau of Adult Detention causing additional safety concerns for employees of GCSO.

4

17. On or about September 29, 2019, once again the Plaintiff was required to be on duty at GCSO with only one other female correction officer although there were several male inmates.

18. That on or about September 29, 2019 GCJ housed well over 11 inmates.

19. That on or about September 29, 2019 GCJ housed around 40 inmates, majority male.

20. On or about the 29th day of September 2019, while only Plaintiff and another female correction were on duty, they were taken over by 4 male inmates who escaped using force.

21. Those 4 male inmates assaulted both female officers and escaped the jail.

22. During the escape, one of the inmates held a knife to Plaintiff's neck.

23. During the escape, the Plaintiff suffered serious physical and mental injuries due to the inmate's attack.

24. As a proximate result of the attack by the inmates, Plaintiff has suffered serious physical and mental injuries.

25. The conduct of Defendants was negligent, knowing, intentional, reckless, wanton, and deliberately indifferent to the serious safety needs of Debra Smith and other employees.

26. Defendants Matt Champlin, Troy Johnson and John Does #1-10 and Jane Does #1-10 were deliberately indifferent to the serious safety needs of the Plaintiff by failing to adhere to a company policy intended to keep female employees safe from male inmates.

27. Defendants Matt Champlin, Troy Johnson and John Does #1-10 and Jane Does #1-10 were deliberately indifferent to the serious safety needs of the Plaintiff by failing to adhere to the Bureau of Adult Detention rating of housing no more than 11 inmates at one time.

28. At all times, relevant to this case, Defendant Matt Champlin was the policymaker for GCSO with respect to requiring at least one male and one female staff member to be on duty when the jail housed both male and female inmates.

29. On information and belief, and at all times relevant to this case, Chief Deputy Troy Johnson when asked to implement the policy by mandating a patrol officer to work the jail when only women was on duty, intentionally and recklessly ignored such request in deliberate indifference to the safety needs of Debra Smith and other staff at GCSO.

30. At all times relevant to this case, Defendants GCSO were also policymakers for the GCSO with respect to employee safety.

31. At all times relevant to this case, Defendants GCSO, MATT CHAMPLIN and TROY JOHNSON were joint participants with respect to establishing policy, practice, procedures, customs, and usages regarding safety of employees and inmates.

32. The failure to have Plaintiff accompanied by a male officer while on duty when the jail not only housed males, but was overpopulated was negligent, knowing, intentional, reckless, wanton, and deliberately indifferent to the safety needs of Debra Smith and other female employees.

33. Upon information and belief, Defendants had policies, practices, customs, and usages that caused female employees to be subject to greater risk of serious harm. Such policies were the moving force behind the injuries suffered by Debra Smith in this case. By not following written policies, Defendants were deliberately indifferent to the serious safety needs of the Plaintiff and other female employees.

34. All Defendants' failures were negligent, reckless, knowing, intentional, willful, wanton, and deliberately indifferent, and all in contravention of the applicable standard of care and protection for female employees.

35. Defendants were also deliberately indifferent to the serious safety needs of Debra Smith despite written policies and ratings by the Bureau of Adult Detention.

36. Matt Champlin was deliberately indifferent to the serious safety needs of Debra Smith by failing to train and supervise staff and implement jail policies, practices, customs, and usages that adequately addressed the obvious known safety risks to female employees when dealing with male inmates.

37. Troy Johnson was deliberately indifferent to the serious safety needs of Debra Smith by failing to train and supervise staff and implement jail policies, practices, customs, and usages that adequately addressed the obvious known safety risks to female employees when dealing with male inmates.

38. Plaintiff alleges that Sheriff Matt Champlin was deliberately indifferent to Debra Smith's obvious need for protection from inmates by being indifferent to the policy of the jail to require all female officers to be accompanied by a male officer when the jail houses male inmates.

39. Further, plaintiff alleges that Defendants acts or omissions by failing to adhere to the jail policies and/or rating by the Bureau of Adult Detention as to how many inmates were permitted to be housed at GCJ lead to the continuation of this known problem.

40. As a direct and proximate result of Defendants' actions, Debra Smith experienced pain, emotional distress, loss of earnings, and suffering that is continuing in nature.

## V. FIRST CAUSE OF ACTION – 42. U.S.C. §1983

41. Plaintiffs incorporate by reference Paragraphs 1-40 as if fully rewritten herein.

42. The Defendants have, under color of state law, deprived Debra Smith of rights, privileges and immunities secured by the Fourteenth and Eighth Amendments to the U.S. Constitution, including but not limited to the right to adequate protection as an a female employee working in a male jail with a right to be free of cruel and unusual punishment.

43. Defendants GCSO, MATT CHAMPLIN and TROY JOHNSON were each deliberately indifferent to Plaintiffs serious safety needs by not following GCSO policy. Each knew that Debra Smith was a female officer and deserved greater protection in light of the environment. Each failed to provide the needed safety protection to Debra Smith.

44. Defendants failed to adequately train and supervise the corrections officers, deputies and staff to protect female employees including Debra Smith.

45. The rules, regulations, customs, policies, procedures, and usages of regarding such were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Debra Smith.

46. Plaintiff alleges that the Defendants violated Debra Smith's constitutional rights by: (1) failing to properly supervise employees; (2) failing to properly train employees; (3) failing to abided by the policy of having a female officer work with a male officer when male inmates were present and (4) failing to implement measures, after having knowledge, to insure the safety of their staff including the women.

47. That the failure in training and to abided by the policy (**Exhibit 1),** amounts to deliberate indifference to the rights of persons employed at GCSO including Debra Smith.

## VI. SECOND CAUSE OF ACTION – 42. U.S.C. §1983

48. Plaintiffs incorporate by reference Paragraphs 1-47 as if fully rewritten herein.

49. The Defendants have, under color of state law, deprived Debra Smith of rights, privileges and immunities secured by the Fourteenth and Eighth Amendments to the U.S. Constitution, including but not limited to the right to adequate protection as an a female employee working in a male jail with a right to be free of cruel and unusual punishment.

50. Defendants GCSO, MATT CHAMPLIN and TROY JOHNSON were each deliberately indifferent to Plaintiffs serious safety needs by allowing more inmates to be housed at GCJ then rated by the Bureau of Adult Detention.

51. Defendants failed to adequately train and supervise the corrections officers, deputies and staff to protect all employees including Debra Smith.

52. The rules, regulations, customs, policies, procedures, and usages of regarding such were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Debra Smith.

53. Plaintiff alleges that the Defendants violated Debra Smith's constitutional rights by: (1) failing to properly supervise employees; (2) failing to properly train employees; (3) failing to abided by the Bureau of Adult Detention rating of permitting no more than 11 inmates at one time and permitting an overpopulated jail and (4) failing to implement measures, after having knowledge, to insure the safety of their staff including the women.

54. That the failure in training and to abided by the Bureau Adult Detention ratings (**Exhibit 2**) amounts to deliberate indifference to the rights of persons employed at GCSO including Debra Smith.

## VII. THIRD CAUSE OF ACTION – NEGLIGENCE

55. Plaintiffs incorporate by reference Paragraphs 1-54 as if fully rewritten herein.

56. Defendants, individually or by and through actual or ostensible employees or agents, were professionally negligent and fell below accepted standards of safety care.

57. Defendants, individually or by and through actual or ostensible employees or agents, failed to exercise the degree of care of reasonably skillful, prudent, and careful Sheriff office would under the same or similar circumstances by, among other things, by failing to comply with the Bureau of Adult Detention rating of 11 inmates and failing to adhere to company policy by requiring a female officer to be accompanied with a male officer when the jail housed male inmates.

58. At GCSO, acting Sheriff, Matt Champlin failed to ensure that adequate policies were in place at the GCSO to appropriately identify, assist and protect female employees around male inmates.

59. At GCSO, acting Sheriff, Matt Champlin and Chief Troy Johnson failed to ensure that adequate policies were in place at the GCSO to appropriately identify, assist and protect all employees from an over crowed jail

60. Defendant Matt Champlin also failed to train and supervise the staff to provide services consistent with the standard of care for the safety of female deputies. Defendant, Matt Champlin permitted female correction officers to work without other male corrections officers in a jail that was overpopulated as to the permitted certification of allowable inmates.

61. As a direct and proximate result of the negligence of Defendants, Debra Smith sustained permanent and severe injuries. Said injuries caused her much pain, suffering,

and mental anguish, thereby denying her a normal way of life, and resulted in loss of life expectancy.

62. As a further direct and proximate result of the negligence of Defendants, the Plaintiff has incurred hospital, medical, and other related expenses.

## VIII. FOURTH CAUSE OF ACTION – RECKLESS CONDUCT

63. Plaintiffs incorporate by reference Paragraphs 1-63 as if fully rewritten herein.

64. Defendants acted in a reckless and willful manner and breached their duty to provide adequate safety and care and to protect the Plaintiff during her employment at GCSO which proximately caused the aforementioned injuries.

## IX. JURY DEMAND

65. A trial by jury composed of the maximum number of jurors permitted under the law is hereby demanded.

## X. PRAYER FOR RELIEF

Wherefore, Plaintiffs demands and prays that this Honorable Court will:

1. Award Plaintiffs compensatory damages in an amount to be shown at trial;
2. Award Plaintiffs punitive damages in an amount to be shown at trial;
3. Award Plaintiffs reasonable attorney's fees, costs, and disbursements;
4. Grant pre-and post judgment interest;
5. Grant Plaintiffs such additional relief as the Court deems just and proper.

Respectfully Submitted,

/s/ John P.M. Rutan
**JOHN P.M. RUTAN, ESQ. (0087019)**
Attorney for Plaintiff
336 South High Street
Columbus, OH 43215
(614) 307-4343 Phone
(614) 340-5848 Telecopier
Email: Rutanlaw@gmail.com



# Gallia County Sheriff's Office Policies & Procedures

## 14.1.11- Female Inmates

Revised: May 9, 2017

As much as possible male and female inmates are kept separated. Male and female inmates are supervised if in an area together (walking thru the intake area, etc.). When both males and females are housed in the jail at least one male and one female staff member shall be on duty at all times.

I. Staff: Only female staff will supervise the female inmates. No male staff member shall do any of the custodial supervision.

II. All inmates in this facility will receive the same type of treatment regardless whether male or female.

III. Female staff may make routine security checks of male inmates, but will not be involved in the shower, observation of clothing exchange, or a searching process. Likewise, male staff will not be involved in a search, observation of clothing exchange or shower process **of a female inmate.**

IV. **When a doctor is examining an inmate, the nurse is present. If the nurse is not available, an officer of the same gender as the inmate will be present.**

V. When an emergency exists and a backup officer is needed, male officers will assist female officers and vice versa.

**EXHIBIT 1**

Jail Radio Frequency and Inmate Intake

Lieutenant Chris Gruber  Monday June 8, 2020 18:03

The Jail is operating on the XSO27TC1 radio frequency. Please use the Jail radio frequency if you need to reach the jail via radio. They typically DO NOT monitor the Sheriff's Office primary radio channel.

As it relates to inmate intakes. If the on duty jailer indicates that they do not have room for an inmate at our jail, please do not call me or try to bypass their decision unless there are some extenuating circumstances. Likewise, jail staff are held accountable to accept prisoners when there is adequate room. The overcrowding our jail and packing inmates in there are days gone by. I can not allow the jail to operate in that condition pursuant to the Ohio Administrative Code. While I share the frustration regarding jail space, it is well identified that we need a larger jail and that falls higher than any of our pay grades. If you need to incarcerate and our jail does not have room, the on duty jail staff will attempt to facilitate transportation to the best of their ability. There will likely be times when road patrol will inherit some of those transports when the jail does not have adequate staffing available. The Ohio Bureau of Adult Detention has our facility rated for 11 inmates. Please take that into consideration when making discretionary arrests.

Thanks,

Chris


EXHIBIT