**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|                              |     |                                          |
| ---------------------------- | :-- | ---------------------------------------- |
| **DEBRA A. SMITH,**          | :   |                                          |
|                              | :   |                                          |
| **Plaintiff,**               | :   | **Case No. 2:20-cv-3089**                |
|                              | :   |                                          |
| **v.**                       | :   |                                          |
|                              | :   | **Chief Judge Algenon L. Marbley**       |
| **GALLIA COUNTY JAIL**, *et al.*, | :   | **Magistrate Judge Chelsey M. Vascura**  |
|                              | :   |                                          |
| **Defendants.**              | :   |                                          |
|                              | :   |                                          |

## OPINION & ORDER

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 23). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

## I.      BACKGROUND

Debra Smith was working as a correctional officer at the Gallia County Jail on September 29, 2019, when she and her fellow correctional officer were overtaken by four inmates, who assaulted them before escaping the jail. Prior to this troubling incident, Ms. Smith had been working fulltime as a correctional officer at the facility since December 2015. (ECF No. 22 ¶ 12). As a correctional officer, Ms. Smith monitored inmates, checked on their safety and assured their basic needs were met, administered medication, and performed hourly checks at the Jail. (*Id.* ¶ 13). Most of her employment passed without incident. Over two years before Ms. Smith's assault, the Gallia County Sheriff's Office, which operates the Jail, adopted a new policy to protect its female employees. This policy required both male and female employees to be on duty at all times when both men and women were housed in the jail. (*Id.* ¶ 15). According to Ms. Smith, this policy was

1

adopted to protect both female correctional staff and women who were incarcerated at the jail by ensuring a correctional officer of the same gender would be on duty to perform privacy-sensitive tasks. (*Id.* ¶ 16). Defendant Matt Champlin, the Sheriff of Gallia County, was the policymaker behind the adoption of this new policy. (*Id.* ¶ 27).

Despite the adoption of this policy, Plaintiff alleges that female correctional officers were placed on duty without a male officer while both men and women were housed in the Jail. (*Id.* ¶ 17). Defendant Chief Deputy Troy Johnson was in charge of implementing the policy at the Jail, but failed to do so. (*Id.* ¶ 28). On the day of her assault, Ms. Smith was scheduled for duty with one other female correctional officer, despite the fact that the majority of individuals housed at the Jail were men. (*Id.* ¶¶ 20–21). Four incarcerated men assaulted both the female officers on duty; one of the men held a knife to Ms. Smith's neck. (*Id.* ¶¶ 23–24). Ms. Smith alleges that she suffered serious physical and mental injuries after the attack and continues to experience emotional distress and suffering to the present day. (*Id.* ¶¶ 25, 45).

Ms. Smith filed a complaint in federal court in June 2020, asserting constitutional and state tort law claims stemming from her assault. She sued Defendants Champlin and Johnson and the Gallia County Sheriff. (ECF No. 1). In August 2020, the Defendants moved to dismiss her complaint and, while that motion was pending, Ms. Smith was granted leave to amend her complaint. (ECF Nos. 10, 20). In November 2020, Ms. Smith filed an amended complaint, naming new Defendants and providing greater specificity as to the types of claims she was asserting. (ECF No. 22). The Defendants have again moved to dismiss her amended complaint and the matter is now ripe for this Court's consideration.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a

failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Hensley Mfg.*, 579 F.3d at 609 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III.    LAW & ANALYSIS

The Defendants have moved to dismiss Ms. Smith's complaint. As a preliminary matter, this Court observes that the parties have reached an agreement as to the proper defendants to this suit. (ECF No. 24 at 1; ECF No. 27 at 1). As Plaintiff has stipulated to the dismissal of Defendants Harold Montgomery, David Smith, Brent Saunders, and the Gallia County Sheriff's Office, these Defendants are therefore **DISMISSED**.  The remaining Defendants all seek to dismiss on the grounds that Plaintiff has failed to state any constitutional claims, and as a result, cannot sustain a *Monell* claim, either. (ECF No. 24 at 4–14; 16–18). The Defendants also argue that, even if the Plaintiff has stated a constitutional claim, the individual Defendants are entitled to qualified

immunity. (*Id.* at 14). Finally, the Defendants move to dismiss all of Plaintiff's state law claims as frivolous. (*Id.* at 18–22).

To survive a motion to dismiss a claim under 42 U.S.C. § 1983, a plaintiff must properly allege that: (1) the defendant was acting under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured under federal law. *Mezibov v. Allen*, 411 F.3d 712, 716–17 (6th Cir. 2005) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). Ms. Smith raises claims against Defendants Matt Champlin and Troy Johnson in their individual and official capacities as employees of a political subdivision, Gallia County. (ECF No. 22 at 5–6). The Defendants do not challenge Ms. Smith's ability to fulfill the requirements of the first prong. By alleging that Defendants acted in their capacity as county employees, Plaintiff has sufficiently alleged the first prong. This Court will now address whether Ms. Smith has met her burden under the second prong for each of her claims.

### A.     Plaintiff Does Not have a Cognizable Eighth Amendment Claim

The Defendants first submit that Plaintiff's Eighth Amendment claim fails as a matter of law because she does not fall into the class of people that the Eighth Amendment protects. The Eighth Amendment reads, in its entirety: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." To trigger the protections of the Eighth Amendment, then, one of three things will be necessary: bail, fine, or punishment. In *Ingraham v. Wright*, the Supreme Court observed that "[b]ail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government." 430 U.S. 651, 664 (1977). The Defendants argue that the Eighth Amendment is limited to punishment in the context of a criminal case. (ECF No. 23 at 4). In

response, Ms. Smith argues that the Eighth Amendment "protects people from cruel and unusual punishment regardless where it happens." (ECF No. 24 at 2).

This Court must then examine the scope of the Eighth Amendment and its proscriptions to determine whether Ms. Smith has stated a claim. The Supreme Court has characterized the cabining of the Eighth Amendment to those convicted of crimes as a "longstanding limitation." *Ingraham*, 430 U.S. at 664. In determining whether to apply the Eighth Amendment to corporal punishment in schools, the Supreme Court canvassed its Eighth Amendment jurisprudence and noted that it had never seen fit to extend the Eighth Amendment beyond the bounds of the criminal legal system and its consequences. *See Ingraham*, 430 U.S. at 667–68 (collecting cases). The Court thus declined to extend the Eighth Amendment's proscriptions on cruel and unusual punishment to schoolchildren because "[t]he prisoner and the schoolchild stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration." *Ingraham*, 430 U.S. at 669. The Supreme Court has continued to emphasize that without a formal adjudication of guilt, "the Eighth Amendment has no application." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

As a result, decisions applying the Eighth Amendment beyond the carceral setting are few and far between. These decisions are also all marked by the presence of one of three things: bail, fines, or incapacitation. In 2019, the Supreme Court held that the excessive fines clause of the Eighth Amendment was applicable to the states. *See Timbs v. Indiana*, 139 S. Ct. 672, 689 (2019). In reaching this conclusion, the Court declined to overrule its earlier decision in *Austin v. United States*, 509 U.S. 602 (1993), in which it held that civil *in rem* forfeitures could be considered fines under the Eighth Amendment, but only if they were partially punitive in nature. *Id.* at 690. Pretrial detainees, who have yet to be convicted of any crime, also have the right to be free from inhumane

treatment while incarcerated. This protection, however, comes not from the Eighth Amendment's "cruel and unusual punishment," but the Fourteenth Amendment. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018). At least one federal appellate court has extended the Eighth Amendment's protections to mentally disabled youths who were involuntarily confined in a state institution. *See Wheeler v. Glass*, 473 F.2d 983, 987 (7th Cir. 1973). Taken together, these precedents do not counsel extending the reach of the Eighth Amendment to a state employee for her workplace conditions, as she has not been incarcerated for a crime or involuntarily confined such that it can be said she is being "punished." As such, Ms. Smith cannot sustain a claim under the Eighth Amendment and the Defendants' motion to dismiss her Eighth Amendment claim is **GRANTED**.

### B.   Plaintiff has Not Pled the Elements of an Equal Protection Claim

When the government treats similarly situated individuals differently, such conduct may give rise to a constitutional claim. Under the Fourteenth Amendment's Equal Protection Clause, government actors may not discriminate on the basis of gender unless the government can put forth an "exceedingly persuasive justification" for treating one gender differently than the other. *United States v. Virginia*, 518 U.S. 515, 531 (1982). This includes in public employment. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).

In Ms. Smith's complaint, she alleges that Gallia County had adopted certain policies to protect its female employees at the jail, yet declined to follow those policies—to her detriment. (ECF No. 22 ¶¶ 14, 16, 17, 22–23). She asserts that the failure to follow these policies amounted to deliberate indifference to the serious safety needs of Plaintiff and other female employees. (*Id.* ¶ 26). The Defendants seek to dismiss her equal protection claim, arguing that Ms. Smith has failed to indicate how she was treated differently from others who were similarly situated and she has

not alleged that the Defendants intentionally failed to follow jail policy because of her gender. (ECF No. 23 at 5). In response, Ms. Smith argues that her claim is based on her gender, which is a protected class, and that she has pled that the Defendants' failure to follow the policy was a deliberate choice. (ECF No. 24 at 2). The Defendants reply that she has not adequately pled a § 1983 equal protection claim because she has not alleged any adverse employment action and her injuries resulted from a third-party, not the actions of Defendants. (ECF No. 27 at 3).

Under the Fourteenth Amendment, individuals have the right to be free from sex-based discrimination in public employment. *Smith*, 378 F.3d at 576 (citing *Davis v. Passman*, 442 U.S. 228, 234–35 (1979)). Ms. Smith contends that the Defendants' failure to follow their own policies reflected deliberate indifference to her safety needs and this failure "deters women from seeking employment opportunities at jails." (ECF No. 22 ¶¶ 26, 43). She also alleges that the Defendants' actions denied her adequate protection and security because of her gender. (*Id.* ¶¶ 59–60). To evaluate her Section 1983 equal protection claims, this Court will use the same standard as it does to evaluate Title VII disparate treatment claims. *See, e.g.*, *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003) ("To prove a violation of the equal protection clause under § 1983, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII."); *see also Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) (noting that disparate treatment claim under Title VII and equal protection claim under Section 1983 mirror one another).[1]

---

[1] An individual can also pursue a 1983 claim for a hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (quoting *Harris Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Sixth Circuit has not yet addressed whether employers may be liable under Title VII when third parties create a hostile work environment. At least one court in the Sixth Circuit has recognized that Title VII may protect employees from hostile work environments created by third parties, where an employer knew of the harassment and failed to take prompt action. *See Parker v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, No. 19-12915, 2020 WL 3121175, at *5 (E.D. Mich. June 12, 2020) (discussing decisions by the Fourth, Eighth, and Ninth Circuits). The Eighth Circuit found that an employer could be liable for a

When an individual seeks to establish an equal protection violation against her public employer in a 42 U.S.C. § 1983 suit, she must demonstrate two things. First, she must show that her employer made an adverse employment decision. *Boger v. Wayne County*, 950 F.2d 316, 324–25 (6th Cir. 1991). Second, she must show that her employer made this decision "with a discriminatory intent and purpose." *Id.* at 325 (quoting *Charles v. Baesler*, 910 F.2d 1349, 1356–57 (6th Cir. 1990)). Defendants dispute that Ms. Smith has pled either of these elements in bringing her equal protection claim. This Court will now examine Ms. Smith's complaint to see if she has sufficiently stated the elements of an equal protection claim.

### 1.    Ms. Smith has Not Alleged that She Suffered an Adverse Employment Action

To state an equal protection claim, a plaintiff must allege that she suffered an adverse employment action. The Sixth Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of [plaintiff's] employment because of [the] employer's conduct." *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). A materially adverse change in conditions must amount to more than a "mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004)). The following conduct by an employer has been found to constitute an adverse employment action: "firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indicia unique to a particular situation." *Smith*, 378 F.3d at 575–76 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

In their motion to dismiss, the Defendants argue that Ms. Smith has not made any

---

hostile work environment where it "clearly controlled the environment in which [the third party resident] resided, and it had the ability to alter those conditions to a substantial degree." *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111–12 (8th Cir. 1997). It is unclear from Ms. Smith's complaint if she is attempting to bring a hostile work environment claim.

allegations that they made any adverse employment decision against her. (ECF No. 23 at 5). Since she has not alleged firing, demotion, or a similar material change in her employment, the Defendants submit that she has no cognizable equal protection claim. (*Id.* at 5–6). In response, Ms. Smith counters that the Defendants' actions "created such a dangerous environment" that her assault "set her up for being fired without using the words." (ECF No. 24 at 3). Ms. Smith also argues that her fears after the assault constituted a demotion. (*Id.*). The Defendants reply that she has cited neither case law, nor any specific allegations from her complaint, to support her argument that she has properly stated an equal protection claim. (ECF No. 27 at 2–3). They also emphasize that her injury at work by third parties does not constitute an adverse employment action and, even if it could, Ms. Smith has not alleged that any Defendant intentionally discriminated against women by "set[ting] up the assault." (*Id.* at 3–4).

Plaintiff's complaint does not identify any adverse employment action taken against her. Ms. Smith's complaint focuses on the September 29, 2019 attack by four escapees, where a knife was held to her neck and she suffered serious physical and mental injuries. (ECF No. 22 ¶¶ 22–25). Ms. Smith alleges that the Defendants' failure to follow their own policies was the moving force behind her injuries. (*Id.* ¶ 26). Ms. Smith does not mention if or when she ceased working at the jail, or whether she was fired or quit, but she does mention that she has experienced a "loss of earnings." (*Id.* ¶ 45). She does not provide any details about her employment status beyond when she began working at the Gallia County Jail and her basic job responsibilities. (*Id.* ¶¶ 12–14). Her response to the Defendants' motion to dismiss mentions the creation of a dangerous environment that "set her up for being fired without using the words," which suggests that she is alleging a constructive discharge.

Ms. Smith's complaint contains only a single allegation that hints at a constructive

discharge: she states that the "deliberate failures of the Defendants created an atmosphere to force women out of the profession of working in Gallia [C]ounty jail" because women were left alone to supervise an overpopulated jail with no male staff on duty. (ECF No. 22 ¶ 65). A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376 F.3d 529, 533–34 (6th Cir. 2004) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). The Sixth Circuit has indicated that a constructive discharge will satisfy the adverse employment action element of a *prima facie* equal protection claim. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). To demonstrate a constructive discharge, the plaintiff must show that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit. *See Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012). The Sixth Circuit employs a multi-factor approach to determine whether such intolerable conditions exist, examining factors including, but not limited to, the presence of: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Logan*, 259 F.3d at 569. The single sentence in Ms. Smith's complaint, without more factual support, does not sufficiently allege a constructive discharge because it does not allow the court to assess whether intolerable conditions existed, does not allege that the Defendants deliberately created these conditions to force her to quit, and does not indicate that Ms. Smith actually quit.

Whether the failure to follow policies, resulting in the attack Ms. Smith suffered, such that

it constitutes an "adverse employment action" for the purposes of sustaining a Section 1983 claim is unclear. Ms. Smith's complaint does not allege that the Defendants fired her, failed to promote her, reassigned her with a decrease in responsibilities, changed her benefits, or otherwise suspended her related to the September 29th attack. In *Deleon v. Kalamazoo County Road Commission*, the Sixth Circuit expanded the possible range of adverse employment actions to encompass job transfers that did not constitute a demotion, but that were accompanied by "a quantitative or qualitative change in the terms of the conditions of employment. . . [which] give[s] rise to some level of objective intolerability." 739 F.3d 914, 919 (6th Cir. 2014). Deleon had been transferred to a new position, wherein he was exposed to toxic and hazardous diesel fumes and contracted bronchitis. *See id.* at 920. His previous position had "never exposed him to the level of hazard presented by the new condition." *Id.*; *see also Gibbs v. Voith Indus. Servs., Inc.*, 60 F. Supp. 3d 780 (E.D. Mich. 2014) (evidence of isolation, vermin, and lack of resting areas in combination with reassignment could constitute adverse employment action). In *Kea v. Donahoe*, a district court found that a reasonable juror could conclude that an employee who was no longer permitted to stop for lunch while using his work vehicle was "negatively impacted" in ability to perform his job and "that condition would be objectively intolerable." 119 F. Supp. 3d 723, 738 (E.D. Mich. 2015). Notably, in *Kea*, the employee did not actually experience a reassignment but had unsuccessfully sought a new position prior to experiencing the change in working conditions. Ms. Smith does allege in her complaint that the "deliberate failures of the Defendants created an atmosphere to force women out of the profession of working in Gallia [C]ounty jail" because women were left alone to supervise an overpopulated jail with no male staff on duty.

On the facts currently pled, this Court cannot find that Ms. Smith has adequately pled an adverse employment action. Accordingly, Defendants' motion to dismiss her equal protection

claim is **GRANTED** and this claim is **DISMISSED WITHOUT PREJUDICE**.

### 2.    Ms. Smith has Alleged A Discriminatory Intent or Purpose

Even if Ms. Smith had adequately pled an adverse employment action, she would also need to allege that it resulted from "purposeful or intentional discrimination on the basis of gender." *See Smith*, 378 F.3d at 577 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)). To succeed on a gender discrimination claim, a plaintiff must allege that the "adverse employment decision would not have been made 'but for' her sex." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988). It is not enough to "simply introduce[e] evidence of discriminatory intent and suggest[] that such intent could have played a role in an adverse employment decision." *Id.* The Defendants' motion to dismiss only addresses whether the Defendants made an adverse employment against her, emphasizing that it was the actions of a third party that caused Plaintiff's injury. (ECF No. 23 at 5–6). Plaintiff's response to the Defendants' motion likewise focuses on the adverse employment decision issue.

Ms. Smith has adequately pled purposeful or intentional gender-based discrimination. In her complaint, Ms. Smith alleges the jail had a policy circa May 2017 that required at least one male and one female staff member to be on duty when both men and women were housed in the jail. (ECF No. 22 ¶ 15). Ms. Smith alleges that, on several occasions, she was only on duty with another female correctional officer, despite the presence of male inmates. (*Id.* ¶ 17). The date Plaintiff was attacked was one such occasion. (*Id.* ¶ 20). Plaintiff alleges that the Defendants' failure to follow its own policies to protect female employees "were the moving force behind the injuries" and the Defendants were "deliberately indifferent" to the needs of its female employees. (*Id.* ¶ 26). She also alleges that Defendant Johnson intentionally and recklessly ignored the request to implement the policy. (*Id.* ¶ 28). According to Ms. Smith, each Defendant knew that its female

officers required greater protection in the environment and, despite this knowledge, failed to provide the needed protection. (*Id.* ¶ 60). Ms. Smith argues that these deliberate failures created an atmosphere that forced women out of working at Gallia County Jail. (*Id.* ¶ 65).

Under Rule 12(b)(6), this Court must draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 458 F.3d 426, 430 (6th Cir. 2008). Ms. Smith has alleged that the Defendants knew that its female officers required greater protection and deliberately failed to follow its policies to protect its female employees. She alleges that Defendant Johnson intentionally ignored requests to implement a policy that would have provided greater protection to female officers. To act deliberately is to act with intention. Drawing all reasonable inferences in favor of Ms. Smith, as this Court is required to do at this stage, it is reasonable to infer from her allegations that the Defendants' deliberate indifference to the safety of its female employees was linked to their gender. Although Ms. Smith failed to plead an adverse employment action adequately, she did adequately allege that the Defendants' actions were purposeful or intentional gender-based discrimination because she accused them of being deliberately indifferent to the known safety risks to their female employees.

### C. Ms. Smith has Stated a Substantive Due Process Claim

The Substantive Due Process Clause of the Constitution protects fundamental rights and liberties from government interference. This provision encompasses those rights that are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). These rights include "the right 'generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.'" *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)). Typically, the government is under no

constitutional obligation to protect individuals against private violence. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). There is an exception to this rule, however, when the state owes a duty of care to an individual and placed her into danger. *See, e.g., Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 491 (6th Cir. 2002). This exception, sometimes referred to as the state-created danger doctrine, is the basis of Ms. Smith's substantive due process claim.

The Defendants seek to dismiss Ms. Smith's substantive due process claim, asserting that Ms. Smith has not asserted a fundamental right because the Constitution does not guarantee workplace safety and, even if she did assert a fundamental right, she has not asserted that the Defendants acted with the requisite level of culpability. (ECF No. 23 at 6–13). Ms. Smith counters that the government has a duty to protect individuals from private violence when the state has a special relationship to the individual or the state has contributed to the danger faced by the individual. (ECF No. 24 at 3–7). The Defendants dispute that either such exception applies here and, as a result, that Ms. Smith has not stated a substantive due process claim.

### 1. Ms. Smith has Alleged a Deprivation of a Constitutional Right

In order to invoke the state-created danger exception, Ms. Smith must first allege that she has been deprived of a substantive due process right. In her complaint, Ms. Smith asserts that she has a "substantive due process right[] to be free from cruel and unusual punishment when pursuing life, liberty, freedom, and bodily integrity as a female employee working in a county jail." (ECF No. 22 67). The Defendants argue that the Supreme Court's decision in *Collins v. City of Harker Heights, Texas* forecloses Ms. Smith from identifying a deprivation of a constitutional right. (ECF No. 23 at 6–7). In *Collins*, the Supreme Court found that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." 503 U.S.

115, 129 (1992). The *Collins* Court faced a case wherein the petitioner had not claimed that the city or any of its agents deliberately harmed her husband, who suffocated while working on a sewer line. *Id.* at 118, 125. Rather, she alleged that the Constitution imposed a duty on the city to provide employees with minimal levels of safety and security in the workplace. *Id.* at 126. The Court found the Constitution imposed no such duty and that the Due Process Clause was "not a guarantee against incorrect or ill-advised personnel decisions." *Id.* at 126–27 (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).

Ms. Smith also argues that *Collins* is distinguishable because the plaintiff in that case had not alleged any deliberate harm by government officials, whereas the Defendants here deliberately put her into a dangerous situation. (ECF No. 24 at 9). In their reply, the Defendants argue that the special relationship exception is inapplicable and that she has not adequately pled the elements of the state-created danger exception.[2] The Defendants contend that allowing Ms. Smith to invoke the state-created danger exception would allow "friction" with the Court's holding in *Collins* that the Constitution does not guarantee a safe workplace, particularly where a plaintiff is engaged in a dangerous profession. (ECF No. 27 at 5–6). They argue that the Constitution does not protect public employees from these inherent, job-related risks and risk of violence by inmates is an inherent risk to corrections officers. (*Id.* at 6).

The Court's decision in *Collins*, however, does not address situations where the city employer may have a duty to protect its employees from the actions of third parties, under either the special relationship or state-created danger theory. Post-*Collins*, the Sixth Circuit has found

---

[2] Ms. Smith does not invoke the special relationship exception in her complaint and did not plead any allegations in her complaint that she was in a special relationship with the state, which typically arises only when an individual is imprisoned or their liberty is otherwise restrained by the state. *See, e.g.*, *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 617 (6th Cir. 2010). A complaint may not be amended by the briefs in opposition to a motion to dismiss. *See, e.g.*, *Koliner v. Moorer*, No. 2:19-cv-1999, 2020 WL 7398701, at *9 (S.D. Ohio Dec. 17, 2020) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). As such, her attempt to proceed under the special relationship theory of liability fails.

that a prison employee could state a claim under the "state-created danger" theory where her employer put her "at a substantial risk of serious, immediate and proximate harm" and such risks were "known or obvious." *Waller v. Trippett*, 49 F. App'x 45, 50–51 (6th Cir. 2002). Notably, the Sixth Circuit's analysis in *Waller* did not turn on whether the individual faced inherent risks in her position. Rather, it asked whether the plaintiff was a member of a limited and specifically defined group and whether the defendant's conduct put the plaintiff and other group members at a substantial risk of harm. *Id.* at 50. To the extent that the Defendants worry about "friction" between *Collins* and the state-created danger theory of liability, this Court notes that the state-created danger theory requires more than a complaint of an unsafe workplace.

In her complaint, Ms. Smith alleges that her constitutional right to bodily integrity was deprived by a third party because of the Defendants' deliberate decisions to allow overcrowding at the jail and to schedule only two women in defiance of jail policy. (ECF No. 22 57, 69–70). The Sixth Circuit has characterized the right to bodily integrity as "first among equals." *Guertin*, 912 F.3d at 918. The Supreme Court has likewise noted that "right to be free from unjustified intrusions on personal security" is among the "historic liberties" protected by the Due Process Clause. *Ingraham*, 430 U.S. at 673. This right covers all sorts of nonconsensual intrusions, including forced medication and a failure to acquire informed consent. *Guertin*, 912 F.3d at 920–21 (collecting cases). As such, Ms. Smith has adequately pled that she was deprived of her fundamental right to bodily integrity when she was physically attacked at the jail.

2. **Ms. Smith has Plausibly Pled the Elements of the State-Created Danger Exception**

Ms. Smith styles her complaint as relying on the "state-created danger" theory of liability to state her substantive due process claim. Under this doctrine, the Sixth Circuit will permit

recovery for private harms where a plaintiff alleges: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *See Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). The Defendants argue that Ms. Smith has not stated a plausible claim because she has not identified any affirmative acts by the Defendants that created or increased a risk of violence and that she has not alleged that the Defendants acted with the requisite level of culpability to sustain a claim. (ECF No. 27 at 8–9). Ms. Smith argues that the Defendants' failure to follow their own policies was an affirmative act that placed her in foreseeable danger. (ECF No. 24 at 6). She emphasizes that the decision to place two women by themselves on the work schedule, in defiance of the adopted policy, was an affirmative act for purposes of the state-created danger theory. (*Id.*).

At this stage of the litigation, Ms. Smith has alleged sufficient allegations to survive the Defendants' motion to dismiss. First, Ms. Smith has alleged an affirmative act by the state which either created or increased the risk that she would be exposed to an act of violence. Ms. Smith has alleged that the Defendants made the affirmative decision to schedule her on duty with only one other female officer, despite the presence of male inmates in the jail, which put her at greater risk of violence. (ECF No. 22 ¶¶ 17, 20, 27–28). She does not allege a general workplace safety issue, but instead has pointed to a specific staffing decision, in violation of a specific policy, that exposed her to an increased risk of harm. This does not allege a failure to act but a deliberate decision by the Defendants. Second, Ms. Smith has alleged that the state's action placed her specifically at risk, as distinguished from a risk that affects the public at large. Ms. Smith is a female correctional

officer employed at the jail, which is a limited and specifically definable group. *See Waller*, 49 F. App'x at 50. According to Ms. Smith's complaint, the Defendants' affirmative scheduling decisions placed its female correctional officers at risk, including Ms. Smith. Third, Ms. Smith has alleged that the state knew or should have known that its actions specifically endangered the plaintiff. Ms. Smith alleges that the staffing policy was adopted because of a known risk to the female correctional officers. (ECF No. 22 ¶¶ 14–15, 75).[3] She has alleged that the safety risks for female employees were known or obvious to the Defendant and these allegations support a reasonable inference that the Defendant acted in conscious disregard of these risks. (*Id.* ¶¶ 14–15, 17, 20). This is all Ms. Smith must do at the motion to dismiss stage: she need not prove up her entire case at this juncture, without the benefit of discovery.

### D. Individual Defendants' Qualified Immunity Claims are Premature

Individual Defendants Champlin and Johnson argue that they are entitled to qualified immunity because Ms. Smith has not pled violations of clearly established law. The doctrine of qualified immunity provides that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A district court may consider qualified immunity on a Rule 12(b)(6) motion, *see Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001),

---

[3] The Defendants rely on *Doe v. Jackson Local School District Board of Education* for the proposition that a plaintiff must plead that the defendants knew, individually, of a risk that plaintiff would be assaulted by inmates and responded to that risk in a way that society would find "conscious shocking." *Doe*, however, was an appeal of a summary judgment decision where the Sixth Circuit found that the plaintiffs had not carried their burden of creating a genuine dispute of material fact regarding culpability under the state-created danger test. *See* 954 F.3d 925, 934–35 (6th Cir. 2020). Requiring Ms. Smith to prevail under Rule 56's requirements to survive a Rule 12(b)(6) motion demands too much. Ms. Smith has alleged that the policies were adopted to protect female employees (ECF No. 22 ¶¶ 14–16). She has also alleged that Defendants Johnson and Champlin were deliberately indifferent to her serious safety needs when they scheduled her to work with only another female correctional officer, in violation of the policy. (*Id.* ¶¶ 27–28, 39–40). As such, she has pled sufficient allegations to survive the 12(b)(6) motion to dismiss.

but it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). An individual's entitlement to qualified immunity is a "threshold question to be resolved at the earliest possible point" in litigation, but "that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433–34 (quoting in part *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). Ordinarily, dismissal under Rule 12(b)(6) premised on defense of qualified immunity is inappropriate since this defense "requires investigation into facts and evidence not available at the early stage of pleadings." 61A Am. Jur. 2d *Pleading* § 535 (2010).

The Defendants argue that Ms. Smith has not identified a violation of "clearly established law." (ECF No. 23 at 14–15). Several of Defendants' arguments pertain to claims which this Court has already dismissed. As to the Plaintiff's remaining substantive due process claim, the Defendants note that "the limited right to state protection from private violence arises out of the substantive due process component of the Fourteenth Amendment, not equal protection or due process." (ECF No. 23 at 15). They note that no Supreme Court case has clearly established a constitutional violation under the state-created danger theory for overcrowding or failure to follow state administrative guidelines. (*Id.* at 15–16). In response, Ms. Smith primarily addresses the doctrine of sovereign immunity, which she asserts is unavailable to the Defendants as county employees. (ECF No. 24 at 13). In their reply, the Defendants correctly note that sovereign immunity is not applicable here and reiterate their argument that they are entitled to qualified immunity. (ECF No. 27 at 10–11).

Ms. Smith has alleged a claim under the Fourteenth Amendment's substantive due process clause, utilizing the state-created danger theory, as previously discussed. The Defendants argue that Plaintiff has failed to meet the "demanding standard" of qualified immunity, but the burden

rests on Defendants to establish their entitlement to this shield from liability. At the motion to dismiss stage, the relevant inquiry is whether the plaintiff has alleged "facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known." *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 1002 (S.D. Ohio 2018) (quoting *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 664 (S.D. Ohio 2016)). In their motion to dismiss, the Defendants note that "the limited right to state protection from private violence arises out of the substantive due process component of the Fourteenth Amendment." (ECF No. 23 at 15). Ms. Smith's right to bodily integrity under the substantive due process clause is clearly established. *See Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (observing that "right to be free from unjustified intrusions on personal security" is among the "historic liberties" protected by the Due Process Clause). As is the state-created danger theory of liability under the substantive due process clause. *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (noting officials may be held liable under state-created danger theory for substantive due process rights of those not within custody); *see also Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 493 (6th Cir. 2002) (considering applicability of substantive due process claim where individual worked in a custodial setting, which is "an environment where the defendants had the opportunity to design the security precautions at the [facility] and to respond to any general dangers that existed").

Ms. Smith has set forth a clearly established right in her pleadings and this is sufficient at the motion to dismiss stage. Whether the facts alleged by Ms. Smith actually constitute violation of her rights, brought under the state-created danger theory, is not appropriate for resolution at this stage, "much less on the basis of qualified immunity." *Adams*, 300 F. Supp. 3d at 1002 (quoting *Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 816 (S.D. Ohio 2014)). This Court cannot

determine whether the Defendants are shielded by qualified immunity at this stage, as the factual issues have not been adequately developed. Accordingly, the Defendants' qualified immunity defense is premature at the motion to dismiss stage.

### E. Plaintiff has Adequately Stated a Claim under *Monell* Against Gallia County

A municipality may be held liable under 42 U.S.C. § 1983 for constitutional violations. In order to pursue a § 1983 claim against a municipality, a plaintiff must allege an unconstitutional action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "constitutional deprivation[] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). Like supervisory liability, a municipality may not be held liable for the acts of its employees under a theory of *respondeat superior*. *Id.* at 691. Ms. Smith alleges that Gallia County had policies, practices, customs, and usages to protect its female employees at the jail from being subject to a greater risk of serious harm. (ECF No. 22 ¶¶ 22, 26). The Defendants argue that Ms. Smith's *Monell* claim fails as a matter of law because she has not stated any cognizable underlying constitutional violation. (ECF No. 23 at 16–17). They argue that a failure to comply with a policy cannot itself show a constitutional violation. (*Id.* at 17). Defendants also contend that Ms. Smith cannot state a *Monell* claim premised on a failure to train. (*Id.* at 17–18).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must adequately plead that: (1) a violation of a federal right took place; (2) the defendants acted under color of state law; and (3) a municipality's policy or custom caused that violation to happen." *Bright v. Gallia County*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)).

Municipal liability will lie if the plaintiff has pled that a government's custom is "so permanent and well-settled as to constitute a custom or usage with the force of law" or when the government's official policy is the "moving force" of the constitutional violation. *See Mathis v. Ohio Rehab. & Corr.*, No. 2:10-cv-574, 2010 WL 39822345, at *2 (S.D. Ohio Oct. 7, 2010) (quoting *Davenport v. Simmons*, 192 F. Supp. 2d 812, 824 (W.D. Tenn. 2001) and *Monell*, 436 U.S. at 694).

Ms. Smith's surviving substantive due process claim is premised on the affirmative decision to schedule only female correctional officers in violation of the adopted policy, which led to a violation of her right to bodily integrity. As previously discussed, Ms. Smith has adequately pled facts to proceed under the state-created danger theory for her substantive due process claim. She has also alleged that the Defendants were acting under color of state law as employees of Gallia County when making such decisions. (ECF No. 22 ¶¶ 68, 70). She also alleges that the existence of the policies demonstrated a knowledge of foreseeable danger to female employees and that the policies were intentionally adopted to protect female employees. (*Id.* ¶¶ 14–15, 75). Despite these policies, she asserts that the Defendants had a pattern or practice of placing only female correctional officers on duty despite the presence of male inmates. (*Id.* ¶¶ 17, 20). These allegations are sufficient to survive a motion to dismiss as to *Monell* liability for her substantive due process claim. *See, e.g.*, *Lyons v. Jacobs*, No. 2:16-cv-813, 2017 WL 4168369, at *7 (S.D. Ohio Sept. 20, 2017) (finding that where Plaintiffs had alleged that the violations of their constitutional and civil rights were a direct result of the city's "custom, practice and/or policy," a *Monell* claim could proceed).

The Defendants also challenge Ms. Smith's *Monell* failure to train claim as insufficient. The Defendants argue that a municipality's liability will be "most tenuous where a claim turns on a failure to train." (ECF No. 23 at 17). To assert a successful claim, they argue, Ms. Smith must

show a pattern of similar constitutional violations by untrained employees. (*Id.* at 18). In response, Ms. Smith argues that the policies here did not create any cognizable liberty interest, but that the failure to follow them violated her right to bodily integrity. (ECF No. 24 at 11). She emphasizes that the policies were "customarily ignored" despite the high probability of danger of which the Defendants were on notice. (*Id.* at 12). When a municipality is on actual or constructive notice that particular omissions in training or supervision may lead to a violation of constitutional rights, a decision to retain that program may be deemed deliberately indifferent. *Connick v. Thompson*, 563 U.S. 51 (2011). A so-called "policy of inaction," when a municipality is on notice of constitutional violations, can be considered the "functional equivalent of a decision by the [municipality] itself to violate the Constitution." *Id.* (quoting *Canton*, 489 U.S. at 395).

Ms. Smith alleges that the adoption of the policy concerning its female employees demonstrated knowledge of risks to these employees. (ECF No. 22 ¶ 75). She also alleges that Defendant had notice but allowed its employees to continue to disregard the policy to protect female correctional officers from abusive conduct. (*Id.* ¶¶ 17, 19, 94). She also alleges that the County permitted, tolerated, and sanctioned a persistent and widespread policy, practice, and custom of deliberate indifference because it failed to train its employees to follow policies to protect female employees, rather than the "actual abusive customs, policies patterns, and practices" in place. (*Id.* ¶ 95). Ms. Smith has adequately alleged that the Defendant was on notice that its staffing policies put female employees at greater risk, leading to the adoption of a new policy. The decision to retain the old policy in practice thus alleges a cognizable *Monell* claim against the County. Accordingly, Defendants' motion to dismiss Plaintiff's *Monell* claims is **DENIED**.

### F.    Defendants' Motion to Dismiss the State Law Claims

Defendants also seek to dismiss the state tort law claims against them on several grounds.

First, they argue that both the County and the individual Defendants are entitled to statutory immunity. Second, they argue that Ms. Smith has failed to state claims for negligence per se and battery. In her response, Ms. Smith concedes that she cannot sustain a claim of negligence per se for violations of the Ohio Administrative Code and stipulates to the dismissal of her fifth cause of action. As such, Defendants' motion to dismiss her negligence per se claim is **GRANTED** and this claim is **DISMISSED**. This Court will now address the remaining state law arguments.

### 1. Defendants' Claims of Statutory Immunity are Premature

The Defendants claim statutory immunity under Ohio law as to the state tort claims against them. The County claims such immunity under O.R.C. § 2744.02(A)(1), which extends immunity to political subdivisions under certain conditions. (ECF No. 23 at 18). The County argues that Ms. Smith has not demonstrated that any of the five exceptions to § 2744.02(A)(1) apply and so they are entitled to immunity. (*Id.* at 18–19). The individual Defendants likewise claim immunity under O.R.C. § 2744.03(A)(6), which provides immunity to employees of political subdivisions unless an exception applies. (*Id.* at 20–21). The Defendants argue that this provision creates a presumption of immunity and Plaintiff has not pled facts suggesting any of the exceptions applies here. (*Id.*). In response, Ms. Smith argues that she has alleged facts to invoke the proprietary function exception to governmental immunity under O.R.C. § 2744.02(B)(2). (ECF No. 24 at 14). In her complaint, Ms. Smith makes allegations that the individual Defendants' conduct was intentional, reckless, and deliberately indifferent. (ECF No. 22 ¶¶ 28, 39–40).

The Defendants are correct in their assertion that the availability of immunity is properly determined by a court prior to trial. *See Carpenter v. Scherer-Mountain Ins. Agency*, 733 N.E.2d 1196, 1206 (Ohio Ct. App. 1999) (citing *Conley v. Shearer*, 595 N.E.2d 862, 869 (Ohio 1992)). The Supreme Court of Ohio has also instructed that this purely legal issue should be determined

"preferably on a motion for summary judgment." *Conley*, 595 N.E.2d at 869 (quoting *Roe v. Hamilton Cnty. Dep't of Hum. Serv.*, 560 N.E.2d 238, 243 (Ohio Ct. App. 1988)). Ohio courts frequently find that immunity defenses present issues "not normally amenable to resolution" at the motion to dismiss stage and emphasize the preferability of resolving these issues at the summary judgment stage. *See, e.g.*, *Roe v. Franklin County*, 673 N.E.2d 172, 181 (Ohio Ct. App. 1996) (finding that affirmative defense of governmental immunity "presents issues not normally amenable to resolution on a Civ.R. 12(b)(6) motion to dismiss"); *Cole v. John G. Johnson & Sons*, No. 68174, 1995 WL 558897, at *3 (Ohio Ct. App. Sept. 21, 1995) (noting necessity of developing factual record before determining whether immunity is appropriate); *Roe v. Hamilton County*, 560 N.E.2d at 243 (same).

Ohio courts will only grant a motion to dismiss premised on an affirmative defense when it is "apparent from the face of the complaint that the defense is available." *Molnar v. City of Green*, 140 N.E.3d 1208, 1213 (Ohio Ct. App. 2019) (quoting *OBLH, LLC v. O'Brien*, No. 2013-T-0111, 2015 WL 1443226, at ¶ 20 (Ohio Ct. App. 2015)). Affirmative defenses typically require reference to materials outside the facts of the complaint, making it inappropriate to resolve such defenses prior to summary judgment. *See id.* Importantly, the Defendants do not argue that it is apparent from the face of Plaintiffs' complaint that the defense of statutory immunity is available. Ohio precedent makes clear that a plaintiff is under no obligation "to prove his case in his initial pleadings," nor must he "affirmatively dispose of the immunity question altogether at the pleading stage." *Id.* (quoting *Chunyo v. Gauntner*, No. 28346, 2017 WL 2802216, at ¶ 10 (Ohio Ct. App. June 28, 2017)).

A plaintiff need not demonstrate an exception to immunity at the pleading stage, as it "would be tantamount to requiring [a] plaintiff to overcome a motion for summary judgment at

the pleading stage." *Scott v. Columbus Dept. of Pub. Utils.*, 949 N.E.2d 552, 554 (Ohio Ct. App. 2011). This, however, is the basis of the Defendants' arguments for statutory immunity: they argue that Ms. Smith has not affirmatively pled or established that any of the exceptions apply, so the Defendants are entitled to immunity at this stage. Ms. Smith need not meet this heightened pleading standard and "anticipate a political subdivision's defenses and plead specific facts to counteract a possible affirmative defense of . . . immunity" to survive a motion to dismiss. *Molnar*, 140 N.E.3d at 1213. The same is true for the individual employees' claims of statutory immunity— Plaintiff has no obligation to "rebut a presumption of immunity" when crafting her complaint. *Id.*

The Defendants have not argued that it is apparent from the face of the pleadings that there exists no set of facts under which Ms. Smith could succeed in countering the defense of statutory immunity. Instead, they erroneously attempt to place the burden on her to overcome statutory immunity in her initial pleadings. The Defendants' claims of statutory immunity are more amenable to resolution at the summary judgment stage and nothing in this Opinion should be construed as denying them the opportunity to raise such arguments again at the appropriate stage of litigation. Accordingly, the Defendants' motion to dismiss Plaintiff's state law claims on the grounds of statutory immunity is also premature at this stage of the litigation.

The Defendants separately argue that Plaintiff's state law negligent training and supervision claim must be dismissed because O.R.C. § 2744.02(B) contains no exception for a failure to hire, train, or supervise its employees. (ECF No. 23 at 21). Ms. Smith challenges the authority upon which Defendants rely to make this argument and emphasizes that this case falls under exception O.R.C. § 2744.02(B)(2) for negligent performance of acts by employees with respect to proprietary functions of political subdivisions. (ECF No. 24 at 17). The primary case upon which Defendants rely, *McConnell v. Dudley*, 144 N.E.3d 369, 377 (Ohio 2019), deals

primarily with whether a municipality can be liable for a failure to train or supervise under exception O.R.C. § 2744.02(B)(1), which by its terms deals with negligent motor vehicle operation. Neither the courts below nor the parties raised the issue of whether any other provision of O.R.C. § 2744.02(B) could encompass these claims and the Supreme Court of Ohio's discussion of other exceptions appears to be *dicta*, because it accepted the discretionary appeal solely to deal with exception (B)(1). As such, it does not appear "apparent from the face of the complaint that the defense is available." *Molnar*, 140 N.E.3d at 1213. Like the Defendants' more general claims to immunity, this argument is premature and more appropriate for resolution at the summary judgment stage.

### 2. Ms. Smith's Battery Claim is Not Cognizable

Defendants Champlin and Johnson also contend that Plaintiff cannot state cognizable battery claims against them. Under Ohio law, a person will be liable for battery "when he acts intending to cause a harmful or offensive contact, and when a harmful contact results. Contact which is offensive to a reasonable sense of personal dignity is offensive contact." *Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988). Defendants argue that they cannot be held liable for the battery committed by inmates and the complaint contains no allegations that they themselves had any contact with the Plaintiff. (ECF No. 23 at 21–22). In response, Ms. Smith cites the Ohio law criminalizing battery. (ECF No. 24 at 18). The Defendants note that Ms. Smith has cited no case law in support of her third-party battery claim and that other decisions from Ohio courts show a reluctance to impose liability in similar situations. (ECF No. 27 at 15). Ms. Smith's brief response to the Defendants' arguments regarding her civil battery claim is essentially non-responsive such that she may be viewed to have waived her claim. *See, e.g.*, *Conrad v. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 791–92 (S.D. Ohio 2019) (failure to refute characterization of claim

or respond to arguments for dismissal constitutes concession and "waives opposition to dismissal").

Even if Ms. Smith's response can be treated as properly preserving her battery claim, she has nevertheless failed to state a claim that is cognizable under Ohio law. Ohio courts have been reticent to impose liability on individuals for torts committed by third parties. As early as *Guyten v. Rhodes* in 1940, Ohio courts have found that imposing personal liability on a negligent actor is inappropriate where a violent act by a third party, though contributed to by an act of neglect, is the proximate cause of the victim's injuries. *See* 29 N.E.2d 444, 445–46 (Ohio Ct. App. 1940) ("It is necessary to allege and prove facts showing that the act or neglect of the defendant is the proximate cause of the injury of which the plaintiff makes complaint."). The Plaintiff has not alleged any willful acts by Champlin or Johnson that are the proximate cause of her injuries sufficient to sustain a battery claim against them. Accordingly, Defendants' motion to dismiss the Plaintiff's battery claims is **GRANTED** and these claims are **DISMISSED**.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED IN PART** and **DENIED IN PART**. Ms. Smith's Eighth Amendment and Fourteenth Amendment Equal Protection claims, as well as her state law negligence per se and battery claims, are **DISMISSED**. Because of Ms. Smith's stipulation of dismissal, Defendants Harold Montgomery, David Smith, Brent Saunders, and the Gallia County Sheriff's Office are **DISMISSED**.

**IT IS SO ORDERED.**

                             **ALGENON L. MARBLEY**
                             **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  July 1, 2021**